IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:14-CR-230 (AJT) |
| | ) | |
| FARHIA HASSAN, *et al.*, | ) | |
| | ) | |
| Defendants | ) | |

GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS INDICTMENT ON SPEEDY TRIAL GROUNDS

The United States opposes the defendant's motion to dismiss the indictment on

speedy trial grounds.  The defendant's motion is quite like the plea of the storied

defendant who murdered his parents and then asked for mercy because he was an

orphan.[1]  The United States has been vigorously pushing for Hassan's extradition, which

she has been contesting as vigorously in the courts in the Netherlands.  Whatever delay

there has been in the defendant receiving a speedy trial, it is only a consequence of her

assiduity in avoiding one.

I.     INTRODUCTION

As the Court is aware, the defendant and four others were charged in a

superseding indictment on June 26, 2014.  In July 2014, the United States obtained the

defendant's provisional arrest in the Netherlands and, shortly thereafter, filed a formal

extradition request.  At about the same time, the United States filed a request for mutual

legal assistance under its treaty with the Netherlands (MLAT).  Since that time, with the

---

[1] *See United States v. Kresler*, 392 Fed. Appx. 765, 770 (11th Cir. 2010) (defining the
term "chutzpah").

exception of a very few months, mostly during which there were holidays or recesses in the prosecutor's office or the Dutch courts, the United States has been in at least monthly contact with the appropriate officials in the Netherlands in efforts both to obtain the evidence requested by its MLAT and to encourage the defendant's prompt extradition.

In considering the defendant's extradition, the Dutch had many requests for additional information, which required, paradoxically, some of the very information that the United States had requested from the Dutch themselves in its MLAT.  In addition to opposing extradition, however, the defendant initiated legal proceedings to prevent the Dutch from producing that evidence to the United States.  Indeed, when lower courts in the Netherlands had approved the production of the evidence, the defendant appealed – twice – to prevent that from happening.  This included an appeal to the highest court in the Netherlands.  As a consequence, the United States did not obtain a full response to its MLAT request until 2018, about four years after it was made.  Further, because of the passage of time, critical evidence that had been included in the MLAT request was no longer available.

II.     ARGUMENT[2]

    A.     THE DEFENDANT HAS WAIVED ANY SIXTH AMENDMENT SPEEDY TRIAL RIGHT.

The defendant has known of the charges against her since at least July 2014, yet she has displayed anything but an interest in obtaining a speedy trial in the United States.

---

[2] The government respectfully submits that the Court, in place of reaching the merits of the defendant's motion, may consider entering an order holding the motion in abeyance until the defendant appears in the United States.  Abeyance is justified under the Court's inherent authority to efficiently administer its proceedings and conserve judicial resources.  *See White v. Raymark Indus., Inc.*, 783 F.2d 1175, 1177 (4th Cir. 1986).  Abeyance is also appropriate under the fugitive disentitlement doctrine.  *See Degen v. United States*, 517 U.S. 820, 824 (1996) (collecting cases applying fugitive disentitlement

From the first, the defendant contested the request for extradition, not only by fighting the request itself, but also by litigating the MLAT request to the highest court in an effort to prevent the United States from obtaining evidence that would have aided in her extradition.  As (even) the Ninth Circuit has held:

> [A defendant] cannot avoid a speedy trial by forcing the government to run the gauntlet of obtaining formal extradition and then complain about the delay that he has caused by refusing to return voluntarily to the United States. Manning could have avoided any post-indictment delay by returning to the United States. His affirmative resistance of the government's efforts to secure his presence in the United States constitutes an intentional relinquishment of his right to a constitutional speedy trial, and he cannot now complain of the delay that he himself caused.

*United States v. Manning*, 56 F.3d 1188, 1195 (9th Cir. 1995).  As the D.C. Circuit put it,

> [I]f [a defendant] was aware that charges were pending against him . . . , his failure to make any effort to secure a timely trial on them (and his apparent desire to avoid one) manifests a total disregard for his speedy trial right.

*United States v. Tchibassa*, 452 F.3d 918, 926 (D.C. Cir. 2006).  The Seventh Circuit had this to say:

> [T]he government has to make sure that the fugitive is aware that he's been indicted or otherwise charged in the United States. But really that's all that should be true. Once he's warned, it's his choice whether to face

---

in criminal context); *United States v. Batato*, 833 F.3d 413, 427 (4th Cir. 2016) (affirming decision below applying fugitive disentitlement in a civil proceeding; explaining "[t]he very logic of fugitive disentitlement is that refusal to face and defend against charges, particularly in the criminal court where procedural rights and the presumption of innocence favor the defendant, is 'but an admission of the want of merit in the asserted defense'" (quoting *Hammond Packing Co. v. Arkansas*, 212 U.S. 322, 351 (1909))).  The defendant is a fugitive availing herself through counsel of the privileges of the United States legal system – including the speedy trial protections afforded to criminal defendants under the Sixth Amendment – while ignoring the attendant obligations conferred by the opportunity to seek relief in federal court.  If past is prologue, she will treat this Court's ruling on her motion as binding only if favorable to her interests.  Accordingly, the time for the defendant to assert her Sixth Amendment speedy trial claim is only *after* she has been brought to the United States.  Until then, the motion is premature.  *In re Kashamu*, 769 F.3d 490, 492 (7th Cir. 2014).

the judicial music in the United States or forgo any speedy-trial right
based on the time he spends out of the reach of our court system.

*In re Kashamu*, 769 F.3d 490, 494 (7th Cir. 2014).[3]  *Cf. United States v. Wangrow,* 924

F.2d 1434, 1437 (8th Cir. 1991) ("Wangrow did not assert his right to a speedy trial and,

in fact, sought to avoid detection by American authorities. Since the delay here is

attributable to Wangrow, he has waived his right to a speedy trial."); *United States v.*

*Aguirre*, 994 F.2d 1454, 1457 n.5 (9th Cir. 1993) ("[W]here, in the face of an indictment,

a defendant takes affirmative steps to elude law enforcement and thus causes the delay

himself . . . , a finding of waiver is proper.").

Because the defendant herself is the sole author of any delay of a speedy trial,[4] the

defendant has waived any Sixth Amendment right to have one.  Her motion should

therefore be denied.

B.    THE DEFENDANT HAS NOT SATISFIED THE FOUR-FACTOR *BARKER* TEST.

Even if the defendant had not waived her Sixth Amendment right to a speedy

trial, the defendant's motion would fail to satisfy the factors for the balancing test that the

Supreme Court established to determine such a claim:

A balancing test necessarily compels courts to approach speedy trial cases
on an ad hoc basis. We can do little more than identify some of the factors
which courts should assess in determining whether a particular defendant
has been deprived of his right. Though some might express them in
different ways, we identify four such factors: Length of delay, the reason

---

[3] "[R]ather than come here to fight the validity of the government's charges, he fought
tooth and nail (and successfully) to prevent his being extradited from the United
Kingdom to the United States.  He not only was functionally a fugitive, he deliberately
forewent the opportunity for a speedy trial." *Id.* at 493-94 (citations omitted).

[4] "It's not as if [she] *wants* to be extradited to stand trial in the United States . . . .  If [she]
wants to fight the charges, [she] has only to fly from [The Hague] to [Alexandria]; there
are loads of reasonably priced flights."  *In re Kashamu*, 769 F.3d at 494 (emphasis in
original).

-4-

for the delay, the defendant's assertion of his right, and prejudice to the defendant.

*Barker v. Wingo*, 407 U.S. 514, 530 (1972).[5]

The Court described the length of the delay as the "triggering mechanism." *Id*. "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors . . . . [T]he length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case." *Id*. The defendant complains of a "delay" following a June 16, 2015, hearing in the Netherlands after which, the defendant claims – incorrectly[6] – "[t]here was no word from the United States" for thirty months. Thirty months is considerably shorter than the more than five-year delay in *Barker* and the more than eight years in *Doggett v. United States*, 505 U.S. 647 (1992); however, we acknowledge that courts have generally found delays of greater than a year to be "presumptively prejudicial" and therefore sufficient to trigger a *Barker* inquiry, *id*.at 652, n.1. Even so, the question is dependent upon the facts of each case. *Id*. Moreover, "[p]rejudice will never be presumed where the Government has pursued the defendant with reasonable diligence from his indictment to his arrest." *United States v. Molina-Solorio*, 577 F.3d 300, 305 (5th Cir. 2009) (internal punctuation omitted). As attested by the accompanying summary of the government's extraordinary efforts to obtain the

---

[5] We assume for argument, but do not concede, that the *Barker* balancing test would apply to the government's pursuit of the extradition of a non-U.S. citizen outside the United States. *See In re Kashamu*, 769 F.3d at 494 ("[W]e're not at all sure that the government ever must try to extradite a fugitive so as to protect his right to a speedy trial. It does no favor to the fugitive, who of course wants to remain beyond the reach of our court system—otherwise he'd leave his place of refuge voluntarily and travel to the United States.").

[6] The substantial efforts of the United States to effect the defendant's extradition are detailed in the attached Summary of Extradition Efforts.

defendant's extradition, the United States has demonstrated surpassing diligence in pursuing her.  Accordingly, under the peculiar circumstances of this case, it cannot be said that the supposed delay is "presumptively prejudicial" and no *Barker* inquiry is required.[7]

Nonetheless, if the Court believes that the defendant has not waived a Speedy Trial claim for the reasons discussed above and that she has established a "presumptively prejudicial" delay, the defendant's motion fails all four of the factors that the Supreme Court has laid down in *Barker* for assessing whether there has been a speedy trial violation.  These four considerations were further elucidated by the Court in *Doggett*:

> Our cases . . . specifically recognize[e] the relevance of four separate enquiries: whether delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result.

*Doggett*, 505 U.S. at 651.  The Fourth Circuit has held that to prevail on a speedy trial claim, a defendant must establish that on balance, the four separate factors weigh in her favor.  *United States v. Hall*, 551 F.3d 257, 271 (4th Cir. 2009).  She cannot do so.

      1.    <u>The Length of the Delay Does Not Weigh in the Defendant's Favor.</u>

The defendant claims a delay of thirty months.  This is not "uncommonly long," *Doggett*, 505 U.S. at 651, or "extraordinary," *Barker*, 407 U.S. at 533, in the context of this case.  Admittedly, the Fourth Circuit has found a thirty-five-month delay to be "uncommonly long."  *United States v. Grimmond*, 137 F.3d 823, 828 (4th Cir. 1998).  On

---

[7] To be clear, "as the term is used in this threshold context, 'presumptive prejudice' does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* enquiry." *Doggett*, 505 U.S. at 652, n.1

the other hand, in *United States v. Hopkins*, 310 F.3d 145 (4th Cir. 2002), the court found

that a "two year delay before trial was not uncommonly long, especially in comparison

with *Barker* where no speedy trial violation was found even though more than five years

had elapsed since arrest." *Id*. at 150.  Absent other considerations, this case would seem

to fall in between.  However, in the context of an extradition request being hotly

contested by the defendant, the delay is hardly uncommon.  Moreover, because the

United States has exercised diligence in pursuing the defendant's extradition, the length

of the delay – and particularly a delay of thirty months – simply cannot be counted

against the government:

> [I]n this case, if the Government had pursued Doggett with reasonable
> diligence from his indictment to his arrest, his speedy trial claim would
> fail.  Indeed, that conclusion would generally follow as a matter of course
> *however great the delay*, so long as Doggett could not show specific
> prejudice to his defense.

*Doggett*, 505 U.S. at 656 (emphasis added).[8]

What made the eight-and-one-half-year delay in *Doggett* unacceptable was the

government's failure to pursue extradition or any other means to track down the

defendant, to bring him to the United States to face trial, or even to inform him of the

---

[8] *See also United States v. Mitchell*, 957 F.2d 465, 469 (7th Cir. 1992) ("[T]he
government filed a formal request for extradition within sixty days and then later
requested accelerated extradition. This effort is sufficient to establish due diligence and
good faith on the part of the government in obtaining Mitchell for trial."); *Tchibassa*, 452
F.3d at 925 n.6 ("there is persuasive authority that the government need not take
extraordinary measures in order to satisfy the reasonable diligence standard"); *United
States v. Demirtas*, 204 F. Supp. 3d 158, 171 (D.D.C. 2016) ("Where a defendant is
located abroad, the hallmark of government diligence is extradition.  If the United States
has a valid extradition treaty in place with a foreign country and prosecutors formally
seek extradition, courts routinely hold that the government has satisfied its diligence
obligation.") (internal edits omitted).

charges against him.  Unlike here, the government in *Doggett* did not make a formal extradition request for the defendant and simply asked that he be "expelled" from Panama.  *Id*. at 649.  Thereafter, the government simply assumed for several years that the defendant remained in Panama, even though the defendant in fact had left Panama for Columbia.  *Id*.  Even when it found that the defendant had left for Columbia, the government again assumed that the defendant remained in Columbia and "made no effort to find out for sure or to track Doggett down, either abroad or in the United States."  *Id*. at 649-50.  As it happened, the defendant had returned to the United States and remained here for six years – unaware of the charges against him – until finally "the Marshal's Service ran a simple credit check . . . and, within minutes, found out where Doggett lived and worked."  *Id*.  at 650.

The facts of *Doggett* are a far cry from those present here.  It is undisputed that the United States began extradition proceedings against the defendant less than a month after she was indicted.  Because the government "pursued [the defendant] with reasonable diligence," *id.* at 656, the thirty-month delay – even assuming it was a "delay" within the meaning of *Barker* and *Doggett* – simply cannot be deemed "uncommonly long" or "extraordinary."

Accordingly, the first factor – the length of the delay – does not weigh in the defendant's favor.

2.      The Reason for the Delay Weighs Heavily Against the Defendant.

The fault for any delay in the defendant receiving a speedy trial rests entirely upon her shoulders.  "Absent evidence of any formal waiver of extradition, we are unwilling to attribute to the government any delay caused by formal extradition proceedings initiated in compliance with the treaty."  *United States v. Thirion*, 813 F.2d

146, 154 (8th Cir. 1987).  Indeed, as *Doggett* strongly suggests, it is questionable whether

*any* delay occasioned by efforts to extradite a defendant should be counted against the

government. *United States v. Demirtas*, 204 F. Supp. 3d 158, 192 (D.D.C. 2016) ("the

delay occasioned by Demirtas's 2015 challenge to his extradition from Germany should

simply be 'excluded from [the] calculation' of overall delay").[9]

As the Fourth Circuit held in similar circumstances in *In re Bramson*, 107 F.3d

865 (4th Cir. 1997) (unpublished):

> [The defendant] admits that he is not being held in Liechtenstein for any
> violation of the laws of that principality, but rather pursuant to that
> country's extradition treaty with the United States for violations of this
> country's laws.  He therefore can presumably return to this country and
> stand trial of his own volition at any time.  Because Bramson is
> responsible for the delay of his trial, his Constitutional right to a speedy
> trial has not been violated.

*Id.*. 1997 WL 65499, at \*1.  The D.C. Circuit reached the same result:

> While the government might have undertaken more frequent and extensive
> efforts to secure Tchibassa's arrest, it is not clear that any such effort
> would have succeeded so long as Tchibassa voluntarily remained beyond
> the United States' legal or practical reach. . . .  We therefore agree with the
> district court that the second factor weighs against Tchibassa because the
> fault for the delay in arrest lay primarily with Tchibassa himself. In this
> respect, the delay between Tchibassa's indictment and arrest differs
> significantly from the situation in Doggett, in which the Supreme Court
> found the defendant's speedy trial right had been violated.

*Tchibassa*, 452 F.3d at 925.  The Seventh Circuit also reached the same result.  *Mitchell*,

957 F.2d at 469 ("Mitchell's fugitive status in Colombia . . . is the principal reason for the

delay in bringing him to trial. Thus, the second factor of the *Barker* analysis weighs

heavily against Mitchell.").  *See also United States v. Blanco*, 861 F.2d 773, 779 (2d Cir.

---

[9] "Ordinarily, the delays involved in international extradition do not violate the speedy-
trial right."  9A Fed. Proc., L. Ed. § 22:1312.

1988) ("Despite her knowledge of the outstanding indictment, Blanco chose to become a fugitive. A person can be said to be a fugitive when, while abroad, they learn that they are under indictment and make no effort to return to the United States to face charges.").

The facts of this case are also very similar to those in *United States v. Lawrence*, No. CRIM. 4:03-00436-1, 2013 WL 6388455 (S.D. Tex. Dec. 6, 2013):

> [T]he vast majority of the delay until Lawrence's extradition to the United States was attributable to his aggressive legal actions in opposition to his extradition or to the slow pace of the Nigerian legal proceedings. Lawrence contested both the extradition generally and various procedures used by the Nigerian courts. . . . Lawrence appealed the lower court's rulings, resulting in further delay. These arguments, while within Lawrence's rights, were much of the reason for the extradition delays.

*Id* at *3.

As all of these cases show, this second *Barker* factor – the reason for the delay – weighs heavily against the defendant.

### 3.   The Timeliness of the Defendant's Speedy Trial Claim Weighs Heavily Against Her.

The defendant cries crocodile tears. Despite her motion, the defendant does not want and has never wanted a "speedy trial" in the United States. In a very real sense, while continuing to hide in the Netherlands, the defendant has yet to assert her speedy trial right at all. Instead, Hassan is "a reluctant defendant who [is] not concerned with a speedy trial." *United States v. Bagga*, 782 F.2d 1541, 1545 (11th Cir. 1986) ("[H]e learned of the indictment . . . , and instead of returning or indicating a desire for a speedy trial, he remained in India for three years."). *See also Rayborn v. Scully*, 858 F.2d 84, 92 (2d Cir. 1988) ("[W]hen it is manifestly apparent that a defendant has no serious interest in the speedy prosecution of the charges against him, a court need not ignore the

defendant's fugitivity or recalcitrance in determining whether his sixth amendment rights have been violated.").

Accordingly, the defendant's continuing refusal to "face the judicial music in the United States," *In re Kashamu*, 769 F.3d at 494, weighs heavily against her when considering the timeliness of her speedy trial claim, the third factor in the *Barker* analysis.  As the Court said in *Doggett*, had the defendant known of his indictment years before he was arrested, "*Barker*'s third factor, concerning invocation of the right to a speedy trial, would be weighed heavily against him."  505 U.S. at 653.  Not surprisingly, then, it appears that nearly every circuit to have considered the issue has found that a defendant's effort to avoid extradition are near fatal to a speedy trial claim.[10]

In *Mitchell*, the Seventh Circuit was unambiguous:

> As to the third *Barker* factor, which considers the timeliness of Mitchell's assertion of his right to a speedy trial, Mitchell is in trouble here as well. He made no attempt to demand a trial, to waive extradition, or to otherwise seek to return to the United States for trial. . . . This renders this third factor a negative for Mitchell.

957 F.2d at 469.  In *Knowles*, the Eleventh Circuit quoted this passage from *Mitchell* and held that it "clearly cuts against Knowles."  390 Fed. Appx at 929.

Moreover, "whether and how a defendant asserts his right is closely related to the other factors we have mentioned."  *Barker*, 407 U.S. at 531.  It may therefore be assumed that those circuits holding that a defendant who contests extradition waives his speedy trial right – as have the Seventh, Eighth, Ninth, and D.C. Circuits, or is at fault for the

---

[10] *But see United States v. Alexander*, 817 F.3d 1178, 1183 (9th Cir. 2016) ("After his arrest, however, Alexander fought extradition for over 16 months. We have held under similar circumstances that this factor, on balance, favors neither party.").

delay – as have the Second and Fourth Circuits, would also find that this third factor weighs heavily against the defendant.

Accordingly, this third *Barker* factor – the timeliness of the assertion of the right – also weighs heavily against the defendant.

4.   The Defendant Cannot Demonstrate Any Actual Prejudice.

The defendant can show no actual prejudice here.  In fact, as the Court said in *Barker*, "barring extraordinary circumstances, we would be reluctant indeed to rule that a defendant was denied this constitutional right on a record that strongly indicates, as does this one, that the defendant did not want a speedy trial."  407 U.S. at 536.  *See also, e.g., United States v. Tranakos*, 911 F.2d 1422, 1429 (10th Cir. 1990) ("We are unimpressed by a defendant who moves for dismissal on speedy trial grounds when his other conduct indicates a contrary desire.").  It is important to note here that whether the Court finds that the delay in this case rises to the level of "presumptive prejudice," the Supreme Court has held that "such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria."  *Doggett*, 505 U.S. 655-66.

Here, there can be no prejudice.  As the Court is aware from the trial of the defendant's co-conspirators, the evidence in this case consists principally of wiretaps and the conspirators' journals showing the contributions each made to al-Shabaab.  There was only one percipient witness, Amina Esse, and her testimony inculpated the defendant.  In any case, the transcript of her testimony would be available to refresh her memory or to impeach her, if the defendant sought to do so.  If anyone, it is the government that has been prejudiced by the delays in the defendant's extradition.  As the Supreme Court noted, "delay is a two-edged sword.  It is the Government that bears the burden of proving its case beyond a reasonable doubt. The passage of time may make it difficult or

-12-

impossible for the Government to carry this burden." *United States v. Loud Hawk*, 474 U.S. 302, 315 (1986).

Accordingly, the fourth and final *Barker* factor – whether the defendant suffered prejudice as a result of the delay – weighs heavily against the defendant.

III. CONCLUSION

By remaining a fugitive in the Netherlands, with full knowledge of the charges against her, the defendant has waived whatever sophistic claim she may have under the Speedy Trial Clause of the Six Amendment. Even if not waived, her claim of a speedy trial violation fails the four-factor test of *Barker* and *Doggett*. Most importantly, she has failed to demonstrate any prejudice from the alleged delay.

If the Court is inclined to reach the merits of the defendant's motion, rather than to hold it in abeyance or to deny it as premature, the United States respectfully requests for the reasons above that the motion be denied outright.

Respectfully submitted,

G. ZACHARY TERWILLIGER
UNITED STATES ATTORNEY


By:  _____/s/_____
James P. Gillis
Virginia Bar No. 65055
Assistant United States Attorney
Amelia R. Medina
Special Assistant United States Attorney
The Justin W. Williams
    United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
(703) 299-3700
(703) 299-3982 (Fax)
james.p.gillis@usdoj.gov

CERTIFICATE OF SERVICE

I certify that on January 31, 2020, I filed the foregoing using the ECF system, which will send a copy to defense counsel of record.

Respectfully submitted,

G. ZACHARY TERWILLIGER
UNITED STATES ATTORNEY


By: _____/s/_____
James P. Gillis
Virginia Bar No. 65055
Assistant United States Attorney
The Justin W. Williams
    United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
(703) 299-3700
(703) 299-3982 (Fax)
james.p.gillis@usdoj.gov

-14-