**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 1:14CR230 |
| | ) | |
| FARHIA HASSAN | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY ON MOTION TO DISMISS
INDICTMENT FOR LACK OF JURISDICTION**

The indictment in this case describes communications among women, some of whom reside within the United States and others who do not, and donations made by Ms. Hassan from her home in the Netherlands to one or more recipients in Somalia. It also alleges that fifteen women, including two individuals in the United States, expressed support for al-Shabaab and discussed their individual donations in an online chat room. Even accepting the governments allegations as true – even if Ms. Hassan talked to someone in the United States about making this payment from one foreign country to another foreign country —2339B does not, and cannot, apply to Ms. Hassan's conduct.

The alleged conduct is not a crime based on the statutory language itself and the presumption against extraterritoriality. Furthermore, Congress, consistent with the Due Process Clause, could not make it a crime. The indictment must be dismissed.

**ARGUMENT**

**I.   Due process demands a "sufficient nexus" between the defendant and the United States**

The government concedes that due process imposes constraints on the application of US law. *See Gov Resp.*, ECF No. 347 at 4. The Due Process Clause requires a "sufficient nexus" between

the defendant and the United States. *See United States v. Brehm*, 691 F.3d 547, 552 (4th Cir. 2012) ("…enforcement in a particular instance must comport with due process."); *United States v. Ibarguen-Mosquera*, 634 F.3d 1370, 1378-79 (11th Cir. 2011); *United States v. Davis*, 905 F.2d 245, 248-49 (9th Cir. 1990)(explaining that due process requires a showing of "sufficient nexus between the defendant and the United States, so that . . . application [of the law] would not be arbitrary or fundamentally unfair."); *see also United States v. Shahani Jahromi*, 286 F. Supp. 2d 723, 727 (E.D. Va. 2003) (Ellis, J.) (explaining that even if Congress intended for the statute to have extraterritorial reach, that extension must nevertheless comport with the due process requirement establishing a sufficient nexus between the defendant and the United States).

In this case, the government argues that Ms. Hassan's alleged conduct comports with due process because her conduct fits the extraterritoriality provisions in 2339B. *See Gov. Resp.*, ECF No. 347 at 1-3, 5-6. This argument confuses the statutory cart with the constitutional horse. Simply reciting the extraterritoriality provisions of the statute and then applying them to the alleged conduct fails to address the constitutional question. Specifically, the inquiry is *not* whether the government can squeeze the facts to fit the extraterritoriality provisions, it's whether doing so violates due process and the presumption against extraterritoriality.

**II.      The presumption is against extraterritoriality – even if the defendant had some contact with the United States.**

2339B must be construed in light of a presumption is against extraterritoriality. When "a statute provides for some extraterritorial application, the presumption against extraterritoriality operates to limit that provision to its terms." *RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090, 2010 (2016). As such, the extraterritoriality provisions in 2339B must be construed narrowly rather than expansively. *Cf. Reyes-Gaona v. North Carolina Growers Assoc., Inc.*, 250 F.3d 861, 865 (4th Cir. 2001) (refusing to extend the ADEA to foreign nationals because "Congress explicitly gave the ADEA extra-territorial application with respect to certain U.S. citizens while simultaneously

2

declining to extend coverage to foreign nationals like Reyes-Gaona"); *Kiobel v. Royal Dutch Petro. Co.*, 569 U.S. 108, 116 (2013).

Moreover, the Supreme Court has twice explained that the presumption requires enforcement even when the conduct at issue involves some connection with the United States, because "the presumption against extraterritorial application would be a craven watchdog indeed if it retreated to its kennel whenever *some* domestic activity is involved in the case." *Kiobel v. Royal Dutch Petro. Co.*, 569 U.S. at 126 (2013)(citing *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010)(emphasis in original)).[1]

### III. Because Ms. Hassan is a foreign national abroad whose conduct occurred entirely overseas, her conduct is not prohibited under 2339B, and making it criminal would violate Due Process.

a. *Jurisdiction over an offense that "occurs in or affects interstate or foreign commerce," as provided in 2339B(d)(1)(E), does not encompass commerce that occurs wholly outside the United States between foreign countries.*

The constitutional authority for the exercise of jurisdiction over "foreign commerce" presupposes a connection between that commerce and the United States. While the statute provides for jurisdiction over an offense that occurs "in or affects interstate or foreign commerce," the Supreme Court has "emphatically rejected reliance on such language, holding that 'even statutes … that expressly refer to '*foreign* commerce' do not apply abroad.'" *See RJR Nabisco*, 136 S. Ct. at 2110 (emphasis in original); *Morrison*, 561 U.S. at 262-63 (same).[2] In other words, "Congress cannot

---

[1] The Court in *Kiobel* and *Morrison* also expressed concern that expanding extraterritorial jurisdiction would generate potential conflicts with the laws of other countries in which the essential acts occurred, and for which the statute did not account. *See Kiobel*, 133 S. Ct. at 1664 (the presumption against extraterritoriality "serves to protect against unintended clashes between our laws and those of other nations which could result in international discord"). That presents a problem here as well as Ms. Hassan is alleged to have donated money to a group that was not designated an FTO in her own country.

[2] *See also NewMarket*, 2011 WL 1988073, at *4 ("[T]he Supreme Court stressed that '[t]he general reference to foreign commerce in the definition of 'interstate commerce' does not defeat the presumption against extraterritoriality.'").

regulate commerce 'among' foreign nations because other nations do not submit their sovereignty to our regulatory powers." *United States v. Bollinger*, 798 F.3d 201, 214 (4th Cir. 2015). As such, the exercise of jurisdiction over matters that are in or affect "foreign commerce" is premised upon a transaction that occurs "'with foreign Nations'---[and therefore] requires a nexus between the United States and a foreign country." *Id.*

In this case, the government argues that since Ms. Hassan's alleged financial transactions "are commerce" her conduct satisfies the requirements of 2339B(b)(1)(E). *Gov. Resp.*, ECF No. 347 at 3. These financial transactions, however, are alleged to have occurred between the Netherlands and Somalia between people with no connection to the United States. Therefore, they are "commerce among foreign nations" over which the United States possesses no regulatory powers. *Id.*[3].

      b. *The object of the conspiracy is not a crime. Therefore, the indictment fails to allege an "offense" under 2339B at all.*

Because sending money from one foreign country to another foreign country is not a crime in the United States, the object of the alleged conspiracy is not a crime, and the indictment cannot stand. To prove conspiracy to provide material support to a terrorist organization, the government must establish: (1) an agreement between two or more persons; (2) to knowingly provide material support or resources to a foreign terrorist organization; (3) subject to the jurisdiction of the United States. *United States v. Khan*, 309 F. Supp. 2d 789, 821 (E.D. Va. 2004); *United States v. Naidu*, 465 Fed. Appx. 264, 265 (4th Cir. 2012). There is no conspiracy, however, if the acts agreed upon, "though consummated, would not be criminal." *Ventimiglia v. United States*, 242 F.2d 620 (4th Cir.

---

[3] The one incident in which Ms. Hassan allegedly solicitated funds from two women in the Netherlands is even more removed. *See Superseding Indictment*, ECF No. 340 at 4-5. Given that the case law is clear – that Congress cannot regulate financial transactions *between* foreign countries – it would be inconceivable that Congress be able to regulate financial transactions that occurred *within* a foreign country.

4

1957); *see also United States v. Baker*, 61 F.3d 317, 325 (5th Cir. 1995) ("Where the government fails to prove that the object of the conspiracy was unlawful, the conviction for conspiracy must be reversed."); *United States v. Aloi*, 511 F.2d 585, 592 (2d Cir. 1975) ("A conspiracy to be criminal must, of necessity, encompass a crime.").

Here, the underlying substantive offense (money traveling from the Netherlands to Somalia) lacks any connection at all to the United States. As explained above, it is not subject to the jurisdiction of the United States. *See United States v. Bollinger*, 798 F.3d at 214 ("Congress cannot regulate commerce 'among' foreign nations..."). Therefore, the underlying substantive offense – the object of the conspiracy – is not a violation of United States law. This means that the indictment alleges Ms. Hassan, a foreign national abroad, agreed to do something that is not illegal, and therefore has not alleged a crime under at all. This alone dooms the government's indictment and extinguishes any argument under 2339B(d)(1)(D), that Ms. Hassan's "offense" occurred "in part in the United States," or under Section 2339B(d)(2), "There is extraterritorial Federal jurisdiction over an offense under this section."[4] Since U.S. material support laws do not apply to wholly extraterritorial material support provided by non-citizens to non-citizens that do not involve the United States, any agreement by a non-U.S. citizen or resident to provide that support cannot be a

---

[4] To the extent the government fleetingly relies only on this one broad sentence in Section 2339B(d)(2) to establish jurisdiction *see* Gov. Resp. ECF No. 347 at 2, this provision would be both facially unconstitutional, and unconstitutional as applied, as it allows unfettered prosecution of a defendant doing anything anywhere in the world in violation of due process described in detail in this motion and reply. Furthermore, it would cause subsections (A)-(F) in 2339B(d)(1) to be superfluous, which violates the "cardinal principle of statutory construction" *Williams v. Taylor*, 529 U.S. 362, 404 (2000), that the court "give effect, if possible, to every clause and word of a statute." *Duncan v. Walker*, 533 U.S. 167, 174; *see also Morrison*, 561 U.S. at 265("[the statute's] explicit provision for a specific extraterritorial application would be quite superfluous if the rest of the [] Act already applied to transactions on foreign exchanges….Even if that were not true, when a statute provides for some extraterritorial application, the presumption against extraterritoriality operates to limit that provision to its terms.").

crime. Therefore, Ms. Hassan could not have committed an "offense" under 2339B at all, under any provision.

> c. *Section 2339B(d)(1)(F) is not so broad as to expand the extraterritorial reach of the underlying statute for which the US would not otherwise have jurisdiction under both the due process clause as well as under the statute itself.*

Attempting to tether Ms. Hassan to U.S. law by alleging she conspired with someone in the United States fails, not only because the object of the conspiracy is not a crime, but also because case law expressly prohibits using ancillary doctrines such as conspiracy or aiding and abetting to criminalize conduct that would otherwise be out of the government's reach.

The extraterritoriality of a conspiracy charge extends only so far as the substantive offense that is the object of the conspiracy. *See United States v. Ballestas*, 795 F.3d 138, 144 (D.C. Cir. 2015). "The statutory bases for charging conspiracy may be applied extraterritorially" only "where the underlying substantive statutes reach extraterritorial offenses." *See United States v. Mohammad-Omar*, 323 F. App'x 259, 261 n.2 (4th Cir. 2009). Thus, whether a 2339B conspiracy charge is "indictable," *see RJR Nabisco*, 136 S. Ct. at 2102, depends on whether the object of the conspiracy falls within that extraterritorial reach of the statute. *See Mohammad-Omar*, 323 F. App'x at 261 n.2; *United States v. Ali*, 718 F.3d 929, 939 (D.C. Cir. 2013) ("Generally, the extraterritorial reach of an ancillary offense like aiding and abetting or conspiracy is coterminous with that of the underlying criminal statute.").

In *United States v. Yakou*, 428 F.3d 241, 252 (D.C. Cir. 2005), the D.C. Circuit explained that for cases relating to extraterritorial conduct, ancillary doctrines such as conspiracy or aiding and abetting are "not so broad as to expand the extraterritorial reach of the underlying statute." The court reiterated that "Congress legislates against the backdrop of the presumption against extraterritoriality … and absent an indication from Congress to the contrary, the crime of aiding and abetting 'confer[s] extraterritorial jurisdiction to the same extent as the offense [ ] that underlie[s it]." *Id.* Thus, the court determined that foreign nationals could not be prosecuted as aiders and abettors

6

under a statute criminalizing activities by "U.S. persons," even though, ordinarily, a person can be convicted of aiding and abetting "even it if would be impossible to convict the aider and abettor as a principal." *Id.* The court held that "[w]hile there is some tension between the presumption against extraterritoriality and the principle that aiders and abettors need not be able to be convicted as principals, the presumption against extraterritoriality, which recognizes courts' limited foreign policy expertise … should control." *Id.* at 253.[5]

In this case, extraterritorial jurisdiction extends only as far "as the [material support] offense that underlies it." *Id.* The underlying material support allegation is providing money from the Netherlands to Somalia. As explained *supra* part *(c)*, the U.S. lacks jurisdiction over money exchanged from one foreign county to another. Therefore, the government cannot simply tack on a conspiracy in an attempt to gain jurisdiction over an offense for which jurisdiction would otherwise lack.

Not only is this limitation mandated by constitutional due process, but by examining the extraterritorial provisions in Section 2399B(d)(1)(C) and (F) together, the statute itself implicitly acknowledges this limitation. These subsections show that jurisdiction over a conspiracy offense is premised both on the substantive object of the conspiracy constituting a violation of 2339B(a) within the jurisdiction of the United States *and* jurisdiction over an "offender." While the conspiracy section, 2339B(d)(1)(F), provides for extraterritorial jurisdiction if an offender "conspires with any person over whom jurisdiction exists under this paragraph to commit an offense under subsection

---

[5] This also conforms to the principle of constitutional avoidance which dictates that when "a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, [a court's] duty is to adopt the latter." *United States ex rel. Attorney General, v. Delaware & Hudson Co.*, 213 U.S. 366, 408 (1909). *See also Jones v. United States*, 526 U.S. 227, 239-40 (1999). *Accord Triestman v. United States*, 124 F.3d 361, 377 (2d Cir. 1997); *United States v. Al-Arian*, 329 F. Supp.2d 1294, 1298 & n. 11(M.D. Fla. 2004) (relative to §2339B); *United States v. Khan*, 309 F. Supp.2d at 822 (applying the same principle to "personnel" in the context of §2339A).

7

(a)," the statute also provides specific provisions addressing jurisdiction over an "offender" in 2339B(d)(1)(C). Under that section, "if the conduct required for the offense occurs outside the United States," jurisdiction over the offender – who is not a national or lawful resident of the United States – occurs only when "an offender is brought into or found in the United States." 2339(d)(1)(C). As such, the statute implicitly acknowledges that jurisdiction does not extend to a non-citizen abroad with respect to an offense predicated upon "conduct . . . [that] occurs outside the United States."[6]

### IV. The Maritime Drug Law Enforcement Act cases are inapplicable.

Drug smuggling in international waters occurs in a place where there is no jurisdiction. Thus, through the MDLEA, and based on an understanding that the drugs were bound for the United States, various countries have consented to allow the United States to exercise jurisdiction over those international waters. *See United States v. Cardales*, 168 F.3d 548, 553 (1st Cir. 1999); *Ballestas*, 417 U.S. App. D.C. at 408. This is a far cry from Ms. Hassan's situation – a foreign national allegedly conspiring to donate funds to other foreign nationals in foreign countries engaged in domestic insurgency.[7]

---

[6] In highlighting this statutory construction in 2339B(b)(1), Ms. Hassan does not concede that the U.S. would have jurisdiction simply by her being "brought into" the United States, as due process still requires a nexus that is lacking in her case and the object of the conspiracy is not a crime.

[7] It is also worth noting that no one is required to be on a boat floating in international waters, whereas it is almost impossible for a land-dwelling human not to be in a country. As such, drug smugglers at sea possess a different flavor of territorial purposefulness in their actions compared with a person who simply exists. More importantly, given that drug couriers afloat are undoubtably an extraordinarily small subset of the population, their prosecution is less vulnerable to the type of arbitrary and unfair enforcement to which the jurisdictional nexus requirement of due process is directed. *See United States v. Jamal Yousef*, 750 F.3d 254, 262 (2d Cir. 2014)( "Due Process requires 'that a territorial nexus underlie the extraterritorial application of a criminal statute,' in order to 'protect[] criminal defendants from prosecutions that are arbitrary or fundamentally unfair.'").

**V.  Both due process *and* the U.S.-Netherlands extradition treaty requires a sufficient nexus.**

The Dutch would likely take issue with the government's assertion that the U.S.-Netherlands bilateral extradition treaty is analogous to the MDLEA in that it "allows for application of our law over its citizens" and thereby eviscerates the need for jurisdictional due process. *Gov. Resp.* at 4.[8] Under no provision does the treaty permit unrestrained application of U.S. law to Dutch citizens.

In fact, the Treaty specifically limits the nature and number of extraditable offense and necessarily requires a sufficient nexus between the defendant and the United States. The only offenses contemplated in the extradition treaty are those "which are punishable under the law of *both* Contracting Parties."[9] Obviously, for conduct to be punishable under the law of the United States, the United States must have jurisdiction. As discussed *supra* part I., the U.S. Constitution demands that jurisdiction exists only when there is a sufficient nexus between the defendant and the United States. Therefore, the extradition treaty necessarily includes the requirement of this nexus. It is inherent in the agreement.

Put another way:

|        | Treaty       | *requires* → | US offense + Dutch offense |
|--------|--------------|--------------|----------------------------|
|        | US offense   | *requires* → | jurisdiction               |
|        | jurisdiction | *requires* → | "sufficient nexus"         |
| ∴      | Treaty       | *requires* → | "sufficient nexus"         |

---

[8] Even if it did, a treaty cannot usurp the bounds of the U.S. Constitution. *See Reid v. Covert*, 354 U.S. 1, 17 (1957) ("It would be manifestly contrary to the objectives of those who created the Constitution, as well as those who were responsible for the Bill of Rights -- let alone alien to our entire constitutional history and tradition -- to construe Article VI as permitting the United States to exercise power under an international agreement without observing constitutional prohibitions.").

[9] *See* Bilateral Extradition Agreement between the United States of America and the Kingdom of the Netherlands, Sept. 29, 2004, S. Treaty Doc. No. 109-14 at 5 (emphasis added).

VI. **There is no universal jurisdiction for material support. U.S. law cannot proscribe wholly foreign support provided by non-U.S. persons to al-Shabaab that is not intended to harm the United States or U.S. citizens.**

"It is a basic premise of our legal system that, in general, 'United States law governs domestically but does not rule the world.'" *RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090, 2100 (2016). "[T]he general and almost universal rule is that the character of an act as lawful or unlawful must be determined wholly by the law of the country where the act is done. ….For another jurisdiction, if it should happen to lay hold of the actor, to treat him according to its own notions rather than those of the place where he did the acts, not only would be unjust, but would be an interference with the authority of another sovereign, contrary to the comity of nations, which the other state concerned justly might resent. *Am. Banana Co. . v. United Fruit Co. .*, 213 U.S. 347, 356 (1909).

The United States has no jurisdiction to prosecute "extraterritorial conduct committed by non-nationals" in the absence of a "jurisdictional nexus," unless the offense is subject to universal jurisdiction. *United States v. Shibin*, 722 F.3d 233, 239 (4th Cir. 2013).[10] "[T]he scope of universal jurisdiction remains exceedingly narrow," *United States v. Bellaizac-Hurtado*, 700 F.3d 1245, 1259–60 (11th Cir. 2012) (Barkett, J., concurring), and does not include material support.

Yet now the government asks this Court to propel "United States law [to] govern[].. the world.'" *RJR Nabisco, Inc.*, 136 S. Ct. at 2100. The government argues that the mere fact that al-Shabaab is a designated FTO satisfies the inquiry into whether Ms. Hassan's alleged conduct

---

[10] In fact, the U.S. has maintained a long-standing *opposition* to "universal" jurisdictional as proposed by other nations and/or international criminal tribunals *See, e.g.*, "Overview of the United States' Opposition to the International Criminal Court," Factsheet, Coalition for the International Criminal Court, available at
<http://www.iccnow.org/documents/CICCFS_US_Opposition_to_ICC_11Dec06_final.pdf>;
Mark D. Kielsgard, *War On the International Court*, 8 N.Y. CITY L. REV. 1 (2005). *See also* Reid v. Covert, 354 U.S. 1 (1957)

10

impacted United States' interests. *See* ECF No. 347 at 5. But that argument would eliminate any extraterritorial limit on the exercise of US criminal law around the world.[11] The FTO designation standing alone merely means that the United States government took an executive action with respect to a particular group. It does not establish any relationship – or say anything at all – about Ms. Hassan's alleged conduct as it relates to the United States. There is absolutely no allegation at all that the "aim of [her] activity [was] to cause harm inside the United States or to U.S. citizens or interests." *See Al Kassar*, 660 F.3d at 118. In fact, by the government's own indictment, al-Shabaab conducted an "insurgency in Somalia." *See Second Superseding Indictment*, ECF No. 340 at 2.

No nexus exists in this case because the defendant is a foreign national with no connection to this country whose conduct occurred entirely overseas. The United States has no authority to criminalize wholly foreign conduct of foreign nationals with no effect on the United States. Accordingly, just as the government cannot criminalize small contributions of money made by foreign nationals to al-Shabaab that occur without any financial connection to the United States, it likewise cannot make criminal a conspiracy to engage in that substantive conduct.

---

[11] An amorphous argument that *any* support for al-Shabaab harms the United States is at best an abstract political or theoretical connection that fails to establish the necessary conduct nexus. First, the reasoning is entirely circular: because al-Shabaab is a U.S.-designated FTO, all aid to al-Shabaab is directed at the U.S. because al-Shabaab a U.S.-designated FTO. It would mean that anyone supporting al-Shabaab anywhere, and in any manner, is subject to U.S. prosecution. That is not true, it does not describe either the material support statute or jurisdiction generally, and it would render the statute unconstitutional.

## **CONCLUSION**

The indictment in this case alleges conduct that neither satisfies the statutory basis for jurisdiction as set forth in 2339B nor the Constitution's requirements before domestic criminal statutes can be applied extraterritorially.  Accordingly, the indictment must be dismissed.

Respectfully Submitted,
FARHIA HASSAN
By Counsel
CARMICHAEL ELLIS & BROCK, PLLC
　　　　　/s/　　　　　　　
Jessica N. Carmichael, Virginia Bar 78339
Counsel for Defendant
108 N. Alfred Street, 1st FL
Alexandria, Virginia 22314
(703) 684-7908
jessica@carmichaellegal.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of February, 2020, I filed the foregoing pleading through the ECF system, which shall then send an electronic copy of this pleading to all parties in this action.

_____/s/_____
Jessica N. Carmichael, Esq.
