**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>FARHIA HASSAN )<br>)<br>Defendant. ) | Criminal No. 1:14CR230 |

**DEFENDANT'S REPLY ON MOTION TO DISMISS
INDICTMENT FOR SPEEDY TRIAL VIOLATION**

After the government requested Ms. Hassan's extradition from the Netherlands in 2014, the Dutch Court ordered the U.S. to provide more information. Instead of continuing to pursue Ms. Hassan's extradition proceedings, the government requested a stay in the name of gathering "necessary" documents, which turned out not to be necessary at all. Gradually, during the resulting four-year year delay, Ms. Hassan assumed the U.S. had lost interest in pursuing her. The government now blames Ms. Hassan for its own continuance request on the fruitless sojourn, while arguing she must have agreed to the transfer of unnecessary documents not in her possession, lest she waive speedy trial.[1]

It was the government who requested an unnecessary continuance resulting in a four-year year delay of Ms. Hassan's extradition proceedings. This is a violation of her right to a speedy trial. Since the government cannot now turn back time, the remedy must be for the Court to dismiss the Indictment.

---

[1] Ms. Hassan does not challenge the government's definition of "chutzpah," *see United States v. Kresler*, 392 Fed. Appx. 765, 770 (11th Cir. 2010), but does not find the term relevant to her position.

I. **The government did not "actively attempt" to bring Ms. Hassan to trial.**

The government's "active attempts" to bring Ms. Hassan to trial mainly consist of sending status inquiries. U.S. status inquiries can hardly be considered a substitute for actual pursuit of extradition.[2] If Government's Exhibit 1 were to be stripped of all status inquires and reports from the Dutch authorities, the list would consist of ten entries over a five-year period:

---

[2] *See United States v. Mendoza*, 530 F.3d 758, 763 (9th Cir. 2008) (holding that the government violated speedy trial when it did not make a "serious effort" to "actively attempt" to bring a defendant located in the Philippines to trial).

| DATE | EVENT |
|---|---|
| 09/11/2014 | United States submitted to the Netherlands a formal request for the extradition of Farhia Hassan |
| 09/15/2014 | U.S. asked that the Dutch Public Prosecutor schedule the hearing as soon as possible. On the same day, the U.S. Dept. of State submitted diplomatic note requesting the extradition of Farhia Hassan and presented it and the extradition papers to the Dutch Ministry of Justice and Security. |
| 01/16/2015 | Dutch authorities informed U.S. authorities that the defendant asked the Dutch prosecutor for additional information from the United States. The U.S. authorities provided a partial response to the questions the same day. The U.S. authorities provided a full response on January 20, 2015. |
| 02/9/2015 | U.S. authorities asked for clarification of the court's ruling |
| 02/17/2015 | U.S. authorities wrote a letter to the Dutch authorities that provided a further explication of the charges against Farhia Hassan |
| 08/15/2017 | U.S. authorities requested that the Dutch authorities re-initiate the extradition proceedings and respond fully to the MLAT request. |
| 11/20/2017 | U.S. provided the Dutch authorities with a detailed and lengthy elucidation of the evidence against the defendant. |
| 11/29/2017 | United States provided the Dutch authorities with a shortened, four- page letter summarizing the evidence against the defendant. |
| 02/1/2018 | United States provided an additional, lengthier summary of the evidence against Hassan |
| 02/19/2019 | Grand Jury in this District returned a second superseding indictment charging the defendant and others with conspiracy to provide material support to a designated foreign terrorist organization, in violation of 18 U.S.C. § 2339B. The indictment added several paragraphs specifically detailing the role of the defendant in the conspiracy, the absence of which had been of concern to the Dutch courts considering the defendant's extradition. |

The government requested that the extradition process be held in abeyance while it pursued documents from an MLAT request. Thus, from June 5, 2015 to November 20, 2017 – a period of *two and a half years* – the government pursued an ancillary MLAT request for documents rather than Ms. Hassan's extradition proceedings.

II. **Reason for the delay - the government's reason for delay is unjustifiable.**

It is painfully self-evident that in September 2014 the U.S. Government had all the information it needed to seek Ms. Hassan's extradition. The Government relied on the same material it possessed in 2014, to request extradition in 2019. And extradition was granted. Yet now the government asks this Court to excuse its almost 3-year continuance request (which ultimately resulted in a four-year delay) in the name of gathering additional "necessary" information.[3]

This delay was not Ms. Hassan fighting her extradition. Ms. Hassan's extradition proceedings were held in abeyance for two-and-a-half years *at the U.S. Government's request* while the U.S. attempted to obtain additional materials from an MLAT request. There was no reason the government could not have pursued Ms. Hassan's extradition contemporaneously, especially since it already possessed all of the information upon which it relied in 2019 to affect her extradition.

III. **Timeliness- Ms. Hassan does not waive speedy trial simply by failing to agree to the transfer of documents. The burden is on the government to "actively attempt" to bring her trial, and the *government* sought a 2.5-year delay which resulted in an over four-year delay.**

As far as Ms. Hassan was aware, the U.S. requested her extradition in June 2015, asked it to be put on hold, and then lost interest. It wasn't until four years later, in 2019, that she learned this issue still remained. Importantly, only *now,* in 2020*,* has the extradition process resumed. Ms. Hassan

---

[3] Additionally, in arguing that Ms. Hassan was not prejudiced by the delay, the government concedes that "the evidence in this case consists principally of wiretaps and conspirators' journals…." Thus, undermining its own argument that the information from the MLAT request was "necessary" to support its extradition request.

4

has not spent the last five years fighting her extradition, the U.S. government put her extradition on ice while it spent that time waiting on a decision regarding the transfer of evidence from the Netherlands to the U.S.[4]

The law may provide leeway for the government when a defendant contests her extradition, but the law does not require that Ms. Hassan agree to the transfer of documents to the government or she waives speedy trial.[5]

Furthermore, Ms. Hassan is not a fugitive "hid[ing] in the Netherlands" to evade law enforcement. *Gov Resp.* at 10; *see United States v. Heshelman*, 521 F. App'x 501, 509 (6th Cir. 2013)("[A] person under investigation for a crime in the United States is not transformed into a fugitive solely on the basis of his or her residence in a foreign jurisdiction or country.")[6] She is not fleeing. She has appeared for her court dates and complied with her bond conditions. More importantly, Ms. Hassan would have had appeared for her June 2015 extradition hearing had the U.S. not requested that it be stayed. Ms. Hassan is not a fugitive, she is a stay-at-home mother of six who has continued her day-to-day routines with a little more gratitude.

---

[4] A decision on this was reached April 20, 2017.
[5] *See United States v. Heshelman*, 521 F. App'x 501, 506 (6th Cir. 2013)("[a] defendant has no duty to bring himself to trial; the [government] has that duty . . . .")(citing *United States v. Ingram*, 446 F.3d 1332, 1337 (6th Cir. 2006); *United States v. Brown*, 169 F.3d 344, 349 (6th Cir. 1999)(the government has an "affirmative constitutional obligation to try the defendant in a timely manner . . . the burden is on the prosecution to explain the cause of the pretrial delay.") (quoting *United States v. Graham*, 128 F.3d 372, 374 (6th Cir. 1997)); *United States v. McConahy*, 505 F.2d 770, 773 (7th Cir. 1974) (Explaining that it is the *government* "who has a constitutional duty to make a diligent, good-faith effort to bring [defendant] before the [district] court for trial.")(citing *Smith v. Hooey*, 393 U.S. 374 (1969))*see also United States v. Pomeroy*, 822 F.2d 718 (8th Cir. 1987).
[6] The discretionary fugitive disentitlement doctrine cited by the government in support of continuing this matter, is inapplicable. "A fugitive from justice has been defined as '[a] person who, having committed a crime, flees from [the] jurisdiction of [the] court where [a] crime was committed or departs from his usual place of abode and conceals himself within the district.'" *Empire Blue Cross and Blue Shield v. Finkelstein*, 111 F.3d 278, 281 (2d Cir. 1997) (citing Black's Law Dictionary 604 (5th ed. 1979)) There is there is no need for the Court to hold this motion in abeyance. In fact, the judicial resources of two counties would be conserved should the Court rule in favor of Ms. Hassan now vice after spending time and effort effectuating her transfer.

The government cites to *In re Kashamu*, 769 F.3d 490, 494 (7th Cir. 2014) to assert that speedy trial requires only that the government make Ms. Hassan aware of an indictment, and does require it to "actively attempt" to bring her to trial. *Kashamu*, however, did not make such a pronouncement. While the Seventh Circuit in *Kashamu*, suggested it would prefer the mere awareness approach, the court actually explained that many courts – including its own circuit – have held that "[s]ome cases have suggested that the government has a duty to seek extradition of a fugitive, if feasible, if it wants to insulate its prosecution of the fugitive (should he ever show up) from a speedy trial defense." *Id.* (citing *United States v. Walton*, 814 F.2d 376, 379-80 (7th Cir. 1987); *United States v. Tchibassa*, 452 F.3d 918, 924-25, 371 U.S. App. D.C. 543 (D.C. Cir. 2006); *United States v. Blanco*, 861 F.2d 773, 778 (2d Cir. 1988)). This "active attempt" requirement is supported by a wealth of caselaw. *See e.g. supra* n. 5.

Furthermore, the other cases the government cites for this proposition involve defendants who were deliberately evading law enforcement or steadfastly challenging their extradition. As explained in the Motion and above, Ms. Hassan was neither fleeing nor challenging her extradition. It was the *government* who stayed the extradition proceedings in this case which, especially after a four-year delay, caused the defense to believe the U.S. was no longer interested in pursuing Ms. Hassan's extradition.

### IV. Length of delay – the government's request for a 2.5-year delay resulted in an over four-year delay

From at least June 5, 2015 – November 20, 2017, pursued an MLAT request rather than Ms. Hassan's extradition. However, the result of that request extended the delay well beyond just those two-and-a-half years because extradition proceedings did not actually resume until December 12,

2019.[7] It is important for the Court to note that an extradition hearing had been scheduled for June 16, 2015, but it was the Dutch Court who ordered additional information, and the government who asked to stay the proceedings. The recommencement did not occur until December 2019. Thus, simply because the government asked the Dutch government to re-initiate extradition proceedings in late 2017 does not toll the speedy trial clock. While the government doesn't have control over the Dutch authorities, the initial delay was at the government's request, and that delay request ultimately caused a lapse of lapse of four-and-a-half years. Absent the government's continuance request, the hearing would have occurred on June 2015.

The government concedes that a delay over one year is presumptively prejudicial. *See* ECF No. 348, *Gov. Resp.* at 5. Yet, the government says its "extraordinary efforts to obtain the defendant's extradition" excuse the two-and-a-half year lapse. As detailed above, the government was *not* engaged in extradition proceedings against Ms. Hassan during that time. The government requested a delay for return on an MLAT request. Thus, the presumptive prejudice is not overcome.

V.     **Prejudice- Ms. Hassan is prejudiced, implicating both the Sixth Amendment and a due process violation**

"[*Barker*] expressly rejected the notion that an affirmative demonstration of prejudice was necessary to prove a denial of the constitutional right to a speedy trial . . . ." *Moore v. Arizona*, 414 U.S. 25, 26 (1973). Furthermore, as mentioned above, the government cannot overcome the presumptive prejudice in this case. Therefore, this Court need not conduct further inquiry. Nevertheless, Ms. Hassan has been prejudiced. The psychological effects of the government's delay cannot be minimized. *See United States v. Black*, 918 F.3d 243, 259 (2d Cir. 2019)(even where the defendants were in part a cause of the delay, the court dismissed the indictment because among

---

[7] It is unrealistic to think that extradition proceedings would resume immediately after the U.S. government requested it. Therefore, the government should have anticipated some amount of delay following its recommencement request.

other issues, "it could not ignore that the accused persons' anxiety and concern regarding the charges."). The uncertainty palpable. In 2015, she believed she was about to be ripped from her family an imprisoned in an unfamiliar land, unable to communicate with anyone. Through the years this paralyzing fear gradually subsided. Now she has been snapped back. It is psychological whiplash. Furthermore, that uncertainty runs deep. Ms. Hassan is charged with an offense that, if convicted, ranges in punishment from probation to twenty years in prison – the difference between being free in time for a child's first day of kindergarten and missing his college graduation.

Additionally, "witnesses' memories and availability are preciously limited." *United States v. Black* 918 F.3d at 243. "[Delayed] defendants must grapple with fading memories, missing witnesses, and other forms of stale evidence. *See Doggett v. United States*, 505 U.S. 647, 654 (1992). The government's contention that fading witnesses or memories are of little concern because the evidence in this case is largely wiretaps and journals is unpersuasive. Ambiguity in notes or conflicting interpretations of a conversation are often resolved by remembering that note, or recalling the conversation and context. Simply because the government's recordings are unlikely to stale over time does not mean Ms. Hassan's defense to them is not impaired.

## **CONCLUSION**

The government requested an unnecessary continuance resulting in a four-year year delay of Ms. Hassan's extradition proceedings. This is a violation of her right to a speedy trial. Since the government cannot now turn back time, the remedy must be for the Court to dismiss the Indictment.

        Respectfully Submitted,
        FARHIA HASSAN
        By Counsel
        CARMICHAEL ELLIS & BROCK, PLLC
            /s/
        Jessica N. Carmichael, Virginia Bar 78339
        Counsel for Defendant
        108 N. Alfred Street, 1st FL
        Alexandria, Virginia 22314
        (703) 684-7908
        jessica@carmichaellegal.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of February, 2020, I filed the foregoing pleading through the ECF system, which shall then send an electronic copy of this pleading to all parties in this action.

                                                _____/s/_____
                                                Jessica N. Carmichael, Esq.