IN THE UNITED STATES DISTRICT COURT FOR

THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No.  1:14-cr-230 (AJT) |
| | ) | |
| FARHIA HASSAN, | ) | |
| | ) | |
| Defendant. | ) | |

**United States's Response in Opposition to**
**Defendant's Motion to Revoke Detention Order**

The United States of America, through the undersigned counsel, respectfully requests that the Court deny the defendant's motion to revoke the detention order in this case.  As Magistrate Judge Buchanan correctly found in the November 4, 2021, detention hearing, there is no condition or combination of conditions that will reasonably ensure either the defendant's appearance or the safety of the community if the defendant is released.  As the defendant acknowledges and as the Court found in the initial detention hearing, the charge with which the defendant stands accused, conspiracy to provide material support to a designated foreign terrorist organization in violation of 18 U.S.C. § 2339B, carries a presumption of detention.  *See* 18 U.S.C. § 3142(e)(3)(C) (establishing statutory presumption in favor of defendant's detention, both due to risk of defendant's non-appearance and danger to community posed by defendant's release, in any case involving certain alleged terrorism offenses listed in 18 U.S.C. § 2332(g)(5)(B)).  The facts of this case particularly aggravated, as the United States will address further below.  The defendant has no legal status in the United States, and was admitted to the country solely to face these charges.  An immigration detainer has been lodged against her.

1

The defendant, Farhia Hassan, is a 38-year-old citizen of the Netherlands, where her husband and six children reside. She was born in Somalia, where her mother and three of her sisters still reside.  She also has two other siblings who reside elsewhere in Europe.  Her sole ties to the United States are an older brother who resides in the Minneapolis area, and an older cousin, who also resides in Minnesota, who is now proposed as a third-party custodian.  At the initial detention hearing, the government argued that the defendant's brother was not a suitable third party custodian due to his criminal history, which included a serious aggravated assault charge involving stabbing a victim with a broken bottle during a bar fight, and an allegation of violent threats against his ex-wife over a child support dispute.  However, neither of those allegations ultimately resulted in criminal conviction, apparently due to victim non-cooperation. The defendant now proposes her cousin, Mohammed Dahir Mohammed, as third-party custodian.

Mr. Mohammed resides in Marshall, Minnesota, with his wife and five children, for whom he provides financially.  He is employed as a long-haul truck driver.  The defendant proposes that Mr. Mohammed move away from his family and reside apart from them, in an apartment in Alexandria, Virginia, which has not yet been secured, for the entire pendency of this case.  In order to do so, Mr. Mohammed will have to quit his job as a truck driver.  Though he will be able to generate partial income because of the shares he owns in his truck, presumably his income will be substantially decreased due to the lack of driver hours.  On this reduced income he proposes to continue to support his wife and five children while also maintaining a new second residence in Alexandria at which he will have to provide for the every need of his cousin – who is of course not authorized to work or generate income in the United States due to

2

her lack of immigration status.  Though Mr. Mohammed may be a suitable third-party custodian in terms of criminal history, this is, as Judge Buchanan alluded to at the initial detention hearing, an extraordinarily unrealistic scenario.  It is fraught with failure points.  This court should not consider releasing the defendant into this situation.

The defendant is charged with conspiring to provide material support to al-Shabaab, a designated foreign terrorist organization.  As this Court is aware, the conduct of the conspirators spanned much of the globe and involved fundraising for al-Shabaab in online PalTalk chatrooms, mostly among women, most of who were sending only small amounts of money.  That small amount of money added up, though, to a conspiracy involving thousands of dollars: money whose value to a terrorist insurgency in Somalia is far greater due to the availability of weapons and vehicles at relatively low cost.  The defendant was an eager participant in the conspiracy, actively joining in the bloodthirsty rhetoric of the chatrooms and discussing the best ways to fundraise under false pretenses to convince members of her community that the money was going to charitable endeavors rather than to fund terrorists.  As this Court knows from the prior trial against co-defendants Muna Osman Jama and Hinda Osman Dhirane, the evidence against Ms. Hassan is overwhelming.

The defendant faces a Sentencing Guidelines range at the statutory maximum of 15 years. Her co-defendants received sentences of 12 and 11 years, respectively; the same weight of evidence supporting their convictions would be brought against Ms. Hassan were this case to proceed to trial.  The defendant was arrested at the same time as her co-defendants in the United States (*i.e.* in July 2014), but she has spent the seven years since then litigating her extradition in the Dutch court system.  She argues in her motion that she "did not understand why she was

being extradited to the United States." But Ms. Hassan is no bewildered, unwitting victim of the U.S. legal system. Throughout the pendency of her multiple appeals in the Netherlands she has had the services of an accomplished and diligent team of Dutch attorneys – several of whom the government has met with directly – to advise her of the charges against her, discuss her legal options and defenses, and argue her case to the Dutch courts. It is true that the defendant complied with her conditions of release in the Netherlands – while she resided in her own home, with her husband and young children. It does not follow that she would necessarily be as compliant in a foreign country, far from her family and children to whom she acknowledges she yearns to return.

The defendant also argues that she does not pose a risk of non-appearance, because despite her substantial overseas ties, her almost complete lack of ties to the United States, and the overwhelming weight of evidence against her, her lack of travel documents render her unable to flee the country. But it is of course perfectly possible to leave the country without travel documents, if one is sufficiently motivated and willing to engage in criminal activity. Furthermore, the pertinent risk is the risk that the defendant fails to appear for court appearances as required, and leaving the country is hardly necessary for a defendant to fail to appear. A U.S. citizen criminal defendant facing a similarly long prison term and similarly extensive evidence, even one with no overseas ties whatsoever, might nevertheless flee the area, go into hiding, or otherwise simply fail to appear at trial. Her proposed third party custodian has no ties to this District, and what few ties the defendant does have in the United States are all in a distant jurisdiction. Furthermore, the defendant has close ties to Somalia as well as the Netherlands; simply returning home is therefore not the defendant's only option should she attempt to flee.

4

Perhaps more importantly, however, the defendant is a danger to the community, and there is no combination of conditions of release that can sufficiently mitigate that risk.  The defendant makes much of the fact that the charged offenses were not violent, and that they took place some time ago.  But there is no evidence that the defendant has softened the radical ideology that led her to cheer on a terrorist group's assassinations.  And, of course, a terrorist offense need not be violent to be harmful: Ms. Hassan's offense was, indeed, entirely online.  She certainly did not personally carry a weapon or fight alongside insurgents.  Her offense was financial—and to replicate it, all she would need would be a cell phone or a computer.

Finally, it is true that the defendant's co-conspirators were released pending in trial in their case.  Those defendants, however, were U.S. citizens whose families and children lived in the United States and who were longstanding members of their communities: essentially, Ms. Jama and Ms. Dhirane were released home to their families.  The conditions of release proposed by Ms. Hassan do not remotely compare.

In light of the above, the defendant is unable to rebut the statutory presumption in favor of her detention.  Because there is no condition or combination of conditions that will reasonably ensure the defendant's appearance and the safety of the community if the defendant is released, the United States respectfully requests that the defendant's motion to revoke the detention order be denied.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By:    _____/s/_____.
Danya E. Atiyeh
Virginia Bar No. 81821

5

James P. Gillis
Assistant United States Attorneys
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Phone: (703) 299-3700
Email: danya.atiyeh@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 17, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

_____/s/_____.
Danya E. Atiyeh
Virginia Bar No. 81821
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Phone: (703) 299-3700
Email: danya.atiyeh@usdoj.gov
