IN THE UNITED STATES DISTRICT COURT FOR

THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 1:14-cr-230 (AJT) |
| | ) | |
| FARHIA HASSAN, | ) | |
| | ) | |
| Defendant. | ) | |

**United States's Response in Opposition to
Defendant's Motion to Dismiss Indictment**

The United States of America, through the undersigned counsel, respectfully requests that the Court deny the defendant's motion to dismiss the Indictment for lack of fair warning under the Due Process Clause of the Fifth Amendment. As this Court correctly found in its April 2, 2020, Order denying the defendant's prior motion to dismiss for lack of jurisdiction, the defendant's contention that she did not have "fair warning" that her conduct would expose her to prosecution in the United States is without merit. Dkt. 360, p. 10, n.2. Controlling caselaw makes clear that the defendant had substantial warning under the Fifth Amendment that her actions might subject her to U.S. prosecution. The United States plainly has jurisdiction over this case, and the defendant's Motion to Dismiss should be denied.

On January 16, 2020, prior to the defendant's extradition to the United States, she filed, through counsel, a motion to dismiss the Indictment in this case, arguing that the United States did not have jurisdiction over the defendant's conduct because that conduct lacked sufficient nexus to the United States. This Court denied that motion in the April 2, 2020, order, finding that because "she has been accused of directly conspiring with persons, at least two of whom

1

were located within the United States during the conspiracy, for the purpose of assisting the efforts of al-Shabaab, a foreign terrorist organization . . . designated as such by the United States Secretary of State," Dkt. 360, p. 10, "Hassan's conduct is sufficiently connected to the United States' interests to ensure that her prosecution is neither arbitrary nor unfair." *Id*. The defendant's 2020 motion did not specifically address the separate but related issue of whether the defendant had fair notice under the Due Process Clause of the Fifth Amendment that her conduct might subject her to prosecution in the United States. Nevertheless, this Court addressed that argument in a footnote:

> Hassan does not appear to contend that her prosecution is in violation of the Due Process Clause because she did not have "fair warning" that her conduct would expose her to prosecution in the United States; and any such contention would be without any merit. As other courts have held, the extraterritorial application of a statute like § 2339B provides fair notice and warning to overseas defendants, like Hassan, of the criminality of their conduct and the likelihood that they would be subject to prosecution somewhere, including in the United States. *See, e.g.*, *Brehm*, 691 F.3d at 594 ("Fair warning does not require that the defendants understand that they could be subject to criminal prosecution in the United States so long as they would reasonably understand that their conduct was criminal and would subject them to prosecution somewhere.") (quoting *Al Kassar*, 604 F.3d at 119); *Mostafa*, 965 F.Supp.2d at 460 (same). This is particularly the case where the conduct underlying the criminal charges relates to terrorism. *See Al-Kassar*, 660 F.3d at 119 (concluding that prosecution for material support to terrorism was not fundamentally unfair when foreign defendants supplied weapons to known terrorist organization overseas for use against U.S. citizens and property); *Ahmed*, 2011 U.S. Dist. LEXIS 123182, at *7-8 (same).

*Id*. at n.2.

There is little, if any, dispute as to the controlling caselaw for purposes of this inquiry. As the defendant notes in her motion, the Fourth Circuit follows the line of cases holding that for purposes of Fifth Amendment Due Process, "there must be a sufficient nexus between the defendant and the United States so that [the] application [of the extraterritorial statute] would not

be arbitrary or fundamentally unfair." *United States v. Mohammad-Omar*, 323 F. App'x 259, 261 (4th Cir. 2009) (*per curiam*) (unpublished), *United States v. Brehm*, 691 F.3d 547 (4th Cir. 2012). In its April 2020 Order, this Court relied on *United States v. Ahmed*, 2011 U.S. Dist. LEXIS 123182, which itself cites *United States v. Kassar*, 660 F.3d 108, 119 (2011) in holding that "[f]air warning does not require that the defendants understand that they could be subject to criminal prosecution in the United States so long as they would reasonably understand that their conduct was criminal and would be subject to prosecution somewhere."

As a preliminary matter, there is an abundance of evidence that the defendant knew just that, and acted accordingly—this is, of course, why the members of the Group of Fifteen spoke in code language. There would be no need to refer to al-Shabaab as "the brothers," or "the family," or to use "camels" as a code word for vehicles, or to send money transfers using a false name (as the defendant did personally on several occasions), if the defendant and her co-conspirators believed that the money they were providing was, as the defendant contends in her motion, simply "a few small donations to a foreign political group."

The government's evidence will prove that the defendant knew full well that al-Shabaab was not a "foreign political group," but rather a violent terrorist insurgency. The defendant's conversations with her co-conspirators make clear that she was well aware of the ongoing violence in Somalia, and of al-Shabaab's targeted campaigns of bombings, mass shootings, and assassinations. The defendant argues that because al-Shabaab was not a designated terrorist organization in the EU at the time of the criminal activity, she could not have known that it was criminal to financially support them. While al-Shabaab was not specifically designated on the EU's sanctions list, Dutch law criminalized providing material support to fund terrorist activity

generally.[1]  Furthermore, the law in Somalia—and in particular in Somaliliand, the autonomous region in northern Somalia where the city of Hargeisa is located—also criminalized support to al-Shabaab.  To the extent the evidence will show that the defendant made contributions to the "Nairobi side" of the conspiracy, financing al-Shabaab was also a crime in Kenya.[2]  Given that the defendant engaged in telephone calls with Muna Osman Jama and Hinda Osman Dhirane, at their home telephone numbers with U.S.-based country codes, the United States's interest in the conspirator's activities would have been evident to her as well—but regardless, there is a wealth of evidence that the defendant knew her conduct was illegal in multiple jurisdictions.

       The defendant's motion elides, as well, the distinction between speech and conduct in the context of criminal conspiracy law.  It is well established that conspiring to commit a crime is criminal conduct, not speech.  *United States v. Hassan*, 742 F.3d 104, 127 (4th Cir. 2014) ("[f]orming an agreement to engage in criminal activities—in contrast with simply talking about religious or political beliefs—is not protected speech.") (citing *United States v. Amawi*, 695 F.3d 457, 482 (6th Cir.2012)).  Specifically, the defendant argues that "Ms. Hassan is accused of forming an agreement to provide material support to al-Shabaab, but not actually providing any material support," and claims that "[t]he government will offer only circumstantial evidence that Ms. Hassan actually sent payments or that any such payments were received by someone affiliated with al-Shabaab."  This is a misunderstanding of the government's evidence.  Rather, the government's evidence will include a recorded telephone call in which the defendant says, in

---

[1] *See* Criminal Code of the Netherlands Section 134a, as amended Jan 10, 2012 (unofficial English translation) ("Any person who intentionally obtains or attempts to obtain for himself or another person means or information for the commission of a terrorist offence or a serious offence for the preparation or facilitation of a terrorist offence [shall be guilty of a crime].")
[2] *See generally* the Republic of Kenya Prevention of Terrorism Act, No. 30 of 2012, available at http://www.vertic.org/media/National%20Legislation/Kenya/KE_Prevention_Terrorism_Act.pdf .

4

reference to a payment to the Hargeisa side of the conspiracy via Iftin hawala, "I am the one. I sent it under the previous name which was familiar to them. [ . . . ] I sent it under the previous name, yes." The evidence will show that the defendant sent that payment using a false name, which is why the Hargeisa-side recipients did not immediately recognize it. Likewise, the government's trial evidence will include a PalTalk chat in which the defendant writes, again in reference to the Hargeisa side of the conspiracy, "The sister in Hargeisa / I sent her money / A long time ago / And she did not get it [ . . . ] Iftin [hawala] / Let her go get it from them / Farxiya Hasan / 50$ [ . . . ] Do not lose the name; it's mine." The evidence here consists of activity that is inarguably conduct—not just speech or verbal pledges of money, but actual international money transfers. The defendant is correct to acknowledge that the government will not present bank transfer records for these transactions—but the government *will* present statements of the defendant that she sent the money, and statements of her co-conspirators that they received the money. A defendant's statement admitting guilt is direct evidence, not circumstantial, *see, e.g.*, *United States v. Russell*, 971 F.2d 1098, 1110, n. 24 (4th Cir. 1992) ("Confessions and eyewitness or ear-witness testimony, of course, are forms of direct evidence . . . "), though regardless both direct and circumstantial evidence should be weighed equally by the jury as the standard jury instructions explain. Certainly the government will *also* present circumstantial evidence of the transfers in the form of co-conspirator Jama's written ledgers of the group's financial pledges.

   Ultimately, there can be no question that the defendant's activity was conduct, not simply speech. This is not a situation, as the defendant claims, where the defendant's "interactions with alleged co-conspirators were limited to phone calls and written chats." Rather, those interactions

also included substantive transfers of money—transfers that were illegal not only in the United States, but also in the Netherlands and in Somaliland.  There can be no question that the defendant was on notice that her conduct was unlawful, and no question that she knew that several of her co-conspirators were located in the United States.

In light of the above, the defendant's motion to dismiss for lack of fair warning under the Fifth Amendment is without merit.  Under the controlling caselaw, the defendant had ample warning that her conduct could subject her to prosecution in the United States.  For all the foregoing reasons, the United States respectfully requests that the defendant's motion be denied.

>Respectfully submitted,
>
>Jessica D. Aber
>United States Attorney
>
>By:     /s/     .
>Danya E. Atiyeh
>Virginia Bar No. 81821
>James P. Gillis
>Assistant United States Attorneys
>United States Attorney's Office
>2100 Jamieson Avenue
>Alexandria, VA 22314
>Phone: (703) 299-3700
>Email: danya.atiyeh@usdoj.gov

**CERTIFICATE OF SERVICE**

      I hereby certify that on February 16, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

                                                                                      /s/          .
Danya E. Atiyeh
Virginia Bar No. 81821
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Phone: (703) 299-3700
Email: danya.atiyeh@usdoj.gov